Nathan Ring, Esq.
Nevada State Bar No. 12078
STRANCH, JENNINGS & GARVEY PLLC
3100 W. Charleston Blvd., Ste. 208
Las Vegas, Nevada 89102
(725) 235-9750
nring@stranchlaw.com

A. Brooke Murphy (*pro hac vice application forth*coming)
MURPHY LAW FIRM
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
T: (405) 389-4989
E: abm@murphylegalfirm.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MITCHELL SCHOENBRUN, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>INTERNATIONAL GAME TECHNOLOGY, a Nevada Corporation and BRIGHTSTAR GLOBAL SOLUTIONS CORPORATION d/b/a BRIGHTSTAR LOTTERY GROUP, a Delaware Corporation,<br><br>       Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

1    Plaintiff Mitchell Schoenbrun ("Plaintiff"), individually and on behalf of all others

2   similarly situated, and on behalf of the general public, brings this Class Action Complaint,

3   against defendants International Game Technology ("IGT") and Brightstar Global Solutions

4   Corporation d/b/a Brightstar Lottery Group ("Brightstar") (collectively, "Defendants") based on

5   personal knowledge and the investigation of counsel, and alleges as follows:

6

7   **I. INTRODUCTION**

8      1.    With this action, Plaintiff seeks to hold Defendants responsible for the harms they

9
10  caused Plaintiff and similarly situated persons in the preventable data breach of Defendants'

11  inadequately protected computer network.

12     2.    IGT is a global technology company that designs, customizes, and

13  manufactures slot machines and other gambling technology.

14     3.    Brightstar offers operational and technical support in the operation of lotteries.

15
16     4.    As part of their business and in order to gain profits, Defendants obtained and

17  stored the personal information of Plaintiff and Class members.

18     5.    By taking possession and control of Plaintiff's and Class members' personal

19  information, Defendants assumed a duty to securely store and protect it.

20     6.    Defendants breached this duty and betrayed the trust of Plaintiff and Class

21  members by failing to properly safeguard and protect their personal information, thus enabling

22  cybercriminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate,

23  release, steal, misuse, and/or view it.

24     7.    On or around November 17, 2024, Defendants became aware of suspicious

25
26  activity on their computer system, indicating a data breach. Based on a subsequent forensic

27  investigation, Brightstar and IGT determined that cybercriminals infiltrated this inadequately

28

secured network and gained access to their files. The investigation further determined that, through this infiltration, cybercriminals accessed and/or acquired files containing the sensitive personal information of 103,879 individuals.[1]

8.    The personally identifiable information ("PII") accessed by cybercriminals included names, contact information, dates of birth, government identification documents or government identification number such as driver's license number, Social Security number or other tax identifier, financial account information, health data, and other information (collectively, "Personal Information").[2]

9.    Defendants' misconduct – failing to implement adequate and reasonable measures to protect Plaintiff's and Class members' Personal Information, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that it did not have adequate security practices in place to safeguard the Personal Information, and failing to provide timely and adequate notice of the Data Breach – caused substantial harm and injuries to Plaintiff and Class members across the United States.

10.    Due to Defendants' negligence and failures, cyber criminals obtained and now possess everything they need to commit personal identity theft and wreak havoc on the financial and personal lives of thousands of individuals, for decades to come.

11.    Plaintiff brings this class action lawsuit to hold Defendants responsible for their grossly negligent—indeed, reckless—failure to use statutorily required or reasonable industry cybersecurity measures to protect Class members' Personal Information.

---

[1] *See* Breach Notification Letter, available at:
https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/551c73d5-f1f0-4328-ba76-5afd6345fa1a.html

[2] *Id.*

12.    As a result of the Data Breach, Plaintiff and Class members have already suffered damages. For example, now that their Personal Information has been released into the criminal cyber domains, Plaintiff and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class members are now forced to deal with the danger of identity thieves possessing and using their Personal Information.

13.    Additionally, Plaintiff and Class members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

14.    Plaintiff brings this action individually and on behalf of the Class and seeks actual damages and restitution.  Plaintiff also seeks declaratory and injunctive relief, including significant improvements to Defendants' data security systems and protocols, future annual audits, Defendant-funded long-term credit monitoring services, and other remedies as the Court sees necessary and proper.

**II. THE PARTIES**

15.    Plaintiff is a citizen and resident of San Francisco, California.

16.    IGT is a Nevada corporation with its principal place of business in Las Vegas, Nevada.

17.    Brightstar is a corporation organized under the laws of the State of Delaware. Brightstar maintains its principal office at 10 Memorial Boulevard, Providence, Rhode Island.

**III. JURISDICTION AND VENUE**

18.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19.    This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff and members of the Class are citizens of states that differ from Defendant.

20.    This Court has personal jurisdiction over Defendants because Defendants conduct business in this District, with IGT maintaining its principal place of business in this District, and Defendants have sufficient minimum contacts in this State.

21.    Venue is likewise proper as to Defendants in this District under 28 U.S.C. § 1391(a)(1) because Defendants' principal place of business is in this District and therefore resides in this District pursuant to 28 U.S.C. § 1391(c)(2). Venue is further proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Class's claims also occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. The Data Breach and Defendants' Belated Notice

22.    On or around November 17, 2025, Defendants became aware of suspicious activity on their computer system, indicating a data breach. Based on a subsequent forensic investigation, Defendants determined that cybercriminals infiltrated this inadequately secured network and gained access to their files. The investigation further determined that, through this infiltration, cybercriminals accessed and/or acquired files containing the sensitive personal information of 103,879 individuals.[3]

23.    The Personal Information accessed by cybercriminals included names, contact information, dates of birth, government identification documents or government identification

---

[3] *Id.*

number such as driver's license number, Social Security numbers or other tax identifiers, financial account information, health data, and other nonspecifed information.[4]

24.    Despite the sensitivity of the PII that was exposed, and the attendant consequences to affected individuals as a result of the exposure, Defendants failed to disclose the Data Breach for almost a year from the time of the Breach. This inexplicable delay further exacerbated the harms to Plaintiff and Class members.

25.    Based on the notice letter received by Plaintiff, the type of cyberattack involved, and public news reports, it is plausible and likely that Plaintiff's Personal Information was stolen in the Data Breach.

26.    Upon information and belief, the unauthorized third-party cybercriminal gained access to the Personal Information, exfiltrated the Personal Information from Defendants' network, and has engaged in (and will continue to engage in) misuse of the Personal Information, including marketing and selling Plaintiff's and Class members' Personal Information on the dark web.

27.    Accordingly, Defendants had obligations created by industry standards, common law, statutory law, and their own assurances and representations to keep Plaintiff and Class members' Personal Information confidential and to protect such Personal Information from unauthorized access.

28.    Nevertheless, Defendants failed to spend sufficient resources on encrypting sensitive personal data, preventing external access, detecting outside infiltration, and training their employees to identify hacking threats and defend against them.

---

[4] *Id.*

29.     The stolen Personal Information at issue has great value to the hackers, due to the large number of individuals affected and the fact the sensitive information that was part of the data that was compromised.

**B. Plaintiff's Experience**

30.     Plaintiff received a notice letter from Defendants dated October 3, 2025, informing him that his Personal Information—including his Social Security number—was specifically identified as having been exposed to cybercriminals in the Data Breach.

31.     Plaintiff is very careful with his Personal Information.

32.     Plaintiff would not have provided his Personal Information to Defendants had he known that Defendants would not utilize standard measures to reasonably secure his sensitive.

33.     Because of the Data Breach, Plaintiff's Personal Information is now in the hands of cyber criminals. Plaintiff and all Class members are now imminently at risk of crippling future identity theft and fraud.

34.     As a result of the Data Breach, Plaintiff has already expended time and suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, researching how best to ensure that he is protected from identity theft, reviewing account statements and other information, and taking other steps in an attempt to mitigate the harm caused by the Data Breach.

35.     Plaintiff is very concerned and worried that his Personal Information is now in the hand of cybercriminals.

36.     Plaintiff has also suffered injury directly and proximately caused by the Data Breach, including: (a) theft of Plaintiff's valuable Personal Information; (b) the imminent and

certain impending injury flowing from fraud and identity theft posed by Plaintiff's Personal

Information being placed in the hands of cybercriminals; (c) damages to and/or diminution in

value of Plaintiff's Personal Information that was entrusted to Defendants with the understanding

that Defendants would safeguard this information against disclosure; (d) loss of the benefit of the

bargain with Defendants to provide adequate and reasonable data security—*i.e.*, the difference in

value between what Plaintiff should have received from Defendants and Defendants' defective

and deficient performance of that obligation by failing to provide reasonable and adequate data

security and failing to protect Plaintiff's Personal Information; and (e) continued risk to

Plaintiff's Personal Information, which remains in the possession of Defendants and which is

subject to further breaches so long as Defendants fails to undertake appropriate and adequate

measures to protect the Personal Information that was entrusted to Defendant.

### C. Defendants had an Obligation to Protect Personal Information under the Law and the Applicable Standard of Care

37.     Defendants also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

38.     Defendants are further required by various states' laws and regulations to protect Plaintiff's and Class members' Personal Information.

39.     Defendants owed a duty to Plaintiff and the Class to design, maintain, and test their computer and application systems to ensure that the Personal Information in their possession was adequately secured and protected.

40.     Defendants owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Personal Information in their possession, including adequately training their employees (and others who accessed Personal Information within their computer systems) on how to adequately protect Personal Information.

41.     Defendants owed a duty to Plaintiff and the Class to implement processes that would detect a breach on their systems in a timely manner.

42.     Defendants owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

43.     Defendants owed a duty to Plaintiff and the Class to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Personal Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal Information with Defendant.

44.     Defendants owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

45.     Defendants owed a duty of care to Plaintiff and the Class because it was a foreseeable victim of a data breach.

**D. Defendants were on Notice of Cyber Attack Threats and of the Inadequacy of their Data Security**

46.     Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it. The general public can tell you the names of some

of the biggest cybersecurity breaches: Target,[5] Yahoo,[6] Marriott International,[7] Chipotle, Chili's, Arby's,[8] and others.[9]

47.    Defendants should certainly have been aware, and indeed was aware, that it was at risk for a data breach that could expose the Personal Information that it collected and maintained.

48.    Defendants were also on notice of the importance of data encryption of Personal Information. Defendants knew it kept Personal Information in its systems and yet it appears Defendants did not encrypt these systems or the information contained within them.

### E. Cyber Criminals Will Use Plaintiff's and Class Members' Personal Information to Defraud Them

49.    Plaintiff and Class members' Personal Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class members and to profit off their misfortune.

---

[5] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/.

[6] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.

[7] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/.

[8] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, CNET (Aug. 1, 2018), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.

[9] *See, e.g.*, Taylor Armerding, *The 18 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Dec. 20, 2018), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

50.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[10] For example, with the Personal Information stolen in the Data Breach, identity thieves can open financial accounts, apply for credit, collect government benefits, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[11] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

51.     Personal Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[12]

52.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

53.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information,

_____

[10]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

[11] https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/.

[12] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/products/gao-07-737.

personally identifiable information and Social Security numbers are worth more than 10x on the black market."[13]

54.    This was a financially motivated Data Breach, as apparent from the discovery of the cyber criminals seeking to profit off the sale of Plaintiff's and the Class members' Personal Information on the dark web. The Personal Information exposed in this Data Breach are valuable to identity thieves for use in the kinds of criminal activity described herein.

55.    These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[14]

56.    Hackers may not use the accessed information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[15]

57.    As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[16]

---

[13] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at* https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x- price-of-stolen-credit-card-numbers.html.

[14] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[15] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/products/gao-07-737.

[16] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

58.     With this Data Breach, identity thieves have already started to prey on the victims, and one can reasonably anticipate this will continue.

59.     Victims of the Data Breach, like Plaintiff and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[17]

60.     In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have suffered, and have been placed at an imminent, immediate, and continuing increased risk of suffering, harm from fraud and identity theft.  Plaintiff and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

61.     Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

      a.     Trespass, damage to, and theft of their personal property including Personal Information;

      b.     Improper disclosure of their Personal Information;

---

[17] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

c.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal Information being placed in the hands of criminals and having been already misused;

d.  The imminent and certainly impending risk of having their Personal Information used against them by spam callers to defraud them;

e.  Damages flowing from Defendants' untimely and inadequate notification of the data breach;

f.  Loss of privacy suffered as a result of the Data Breach;

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h.  Ascertainable losses in the form of deprivation of the value of individuals' personal information for which there is a well-established and quantifiable national and international market;

i.  The loss of use of and access to their credit, accounts, and/or funds;

j.  Damage to their credit due to fraudulent use of their Personal Information; and

k.  Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

62.  Moreover, Plaintiff and Class members have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and

safeguards. Defendants have shown themself to be incapable of protecting Plaintiff's and Class members' Personal Information.

63.    Plaintiff and Class members are desperately trying to mitigate the damage that Defendants have caused them but, given the Personal Information Defendants made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Personal Information, Plaintiff and all Class members will need to have identity theft monitoring protection for the rest of their lives.

64.    None of this should have happened. The Data Breach was preventable.

**F. Defendants Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Personal Information**

65.    Data breaches are preventable.[18] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[19] she added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[20]

66.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures ... Appropriate information

---

[18]Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

[19]*Id.* at 17.

[20]*Id.* at 28.

security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[21]

67.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

68.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[22]

69.    The FTC further recommends that companies not maintain Personal Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

---

[21] *Id.*

[22] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

70.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

71.    Defendants failed to properly implement basic data security practices, including those set forth by the FTC.

72.    Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

73.    Upon information and belief, Brightstar failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiffs' and Class Members' Personal Information, resulting in the Data Breach.

74.    Defendants were entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of Plaintiff's and Class Members' Personal Information.

75.    Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendants' failure to incur the

costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff's and Class members' Personal Information.

76.     Defendants were at all times fully aware of their obligation to protect the Personal Information of Plaintiff and Class members. Defendants were also aware of the significant repercussions that would result from their failure to do so.

77.     Defendants maintained the Personal Information in a reckless manner. In particular, the Personal Information was maintained and/or exchanged, unencrypted, in Defendants' systems and were maintained in a condition vulnerable to cyberattacks.

78.     Defendants knew, or reasonably should have known, of the importance of safeguarding Personal Information and of the foreseeable consequences that would occur if Plaintiff's and Class members' Personal Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach.

79.     The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class members' Personal Information was a known risk to Defendant, and thus Defendants were on notice that failing to take necessary steps to secure Plaintiff's and Class members' Personal Information from those risks left that information in a dangerous condition.

80.     Defendants disregarded the rights of Plaintiff and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' Personal Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration

of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## V. CLASS ACTION ALLEGATIONS

81.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

82.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of the Class, defined as follows:

> All persons residing in the United States whose Personal Information was compromised as a result of the Data Breach.

83.    Plaintiff also brings claims under the laws of the State of California on behalf of the California Subclass, defined as follows:

> All persons residing in California whose Personal Information was compromised as a result of the Data Breach.

84.    Plaintiff reserves the right to amend the above definition or to propose additional subclasses in subsequent pleadings and motions for class certification.

85.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

86.    **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. The proposed Subclass is also believed to be so numerous that joinder of all members would be impractical. Per Defendants' public statements, 103,879 individuals' information was impacted in the Breach.

87.    **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendants' uniform misconduct. The same event

and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Personal Information compromised in the same way by the same conduct of Defendant.

88.    **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class that Plaintiff seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

89.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

90.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.      Whether Defendants engaged in the wrongful conduct alleged herein;

b.      Whether Defendants failed to adequately safeguard Plaintiff's and the Class's Personal Information;

c.      Whether Defendants' email and computer systems and data security practices used to protect Plaintiff's and Class members' Personal Information violated the FTC Act, and/or state laws and/or Defendants' other duties discussed herein;

d.      Whether Defendants owed a duty to Plaintiff and the Class to adequately protect their Personal Information, and whether it breached this duty;

e.      Whether Defendants knew or should have known that their computer and network security systems and business email accounts were vulnerable to a data breach;

f.      Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach;

g.      Whether Defendants breached contractual duties owed to Plaintiff and the Class to use reasonable care in protecting their Personal Information;

h.      Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i.      Whether Defendants continues to breach duties to Plaintiff and the Class;

j.      Whether Plaintiff and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

k.    Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

l.    Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class and the general public;

m.    Whether Defendants' actions alleged herein constitute gross negligence; and

n.    Whether Plaintiff and Class members are entitled to punitive damages.

**VI. CAUSES OF ACTION**

**COUNT ONE**

**NEGLIGENCE**

91.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

92.    Defendants solicited, gathered, and stored the Personal Information of Plaintiff and the Class as part of the operation of their business and in order to gain revenues.

93.    Upon accepting and storing the Personal Information of Plaintiff and Class members, Defendants undertook and owed a duty to Plaintiff and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

94.    Defendants had full knowledge of the sensitivity of the Personal Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal Information was wrongfully disclosed, and the importance of adequate security.

95.    Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices on the part of Defendant. Plaintiff and the Class members had no ability to

protect their Personal Information that was in Defendants' possession. As such, a special relationship existed between Defendants and Plaintiff and the Class.

96.    Defendants were well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal sensitive personal information.

97.    Defendants owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

98.    Defendants' duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

99.    Defendants had duties to protect and safeguard the Personal Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Personal Information. Additional duties that Defendants owed Plaintiff and the Class include:

       a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiff's and

Class members' Personal Information was adequately secured from impermissible release, disclosure, and publication;

b.    To protect Plaintiff's and Class members' Personal Information in their possession by using reasonable and adequate security procedures and systems;

c.    To implement processes to quickly detect a data breach, security incident, or intrusion involving their business email system, networks and servers; and

d.    To promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their Personal Information.

100.    Only Defendants were in a position to ensure that their systems and protocols were sufficient to protect the Personal Information that Plaintiff and the Class had entrusted to it.

101.    Defendants breached their duty of care by failing to adequately protect Plaintiff's and Class members' Personal Information. Defendants breached their duties by, among other things:

a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Personal Information in their possession;

b.    Failing to protect the Personal Information in their possession by using reasonable and adequate security procedures and systems;

c.    Failing to adequately and properly audit, test, and train their employees to avoid phishing emails;

    d.    Failing to use adequate email security systems, including industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails;

    e.    Failing to adequately and properly audit, test, and train their employees regarding how to properly and securely transmit and store Personal Information;

    f.    Failing to adequately train their employees to not store Personal Information longer than absolutely necessary for the specific purpose that it was sent or received;

    g.    Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Personal Information;

    h.    Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

    i.    Failing to promptly notify Plaintiff and Class members of the Data Breach that affected their Personal Information.

102.    Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

103.    As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

104.    Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the Personal Information of Plaintiff and Class members from being stolen and misused, Defendants unlawfully breached their duty to use reasonable care

1  to adequately protect and secure the Personal Information of Plaintiff and Class members while it

2  was within Defendants' possession and control.

3      105.   Further, through their failure to provide timely and clear notification of the Data

4  Breach to Plaintiff and Class members, Defendants prevented Plaintiff and Class members from

5  taking meaningful, proactive steps toward securing their Personal Information and mitigating

6  damages.

7      106.   As a result of the Data Breach, Plaintiff and Class members have spent time,

8  effort, and money to mitigate the actual and potential impact of the Data Breach on their lives,

9  including but not limited to, responding to fraudulent activity, closely monitoring bank account

10  activity, and examining credit reports and statements sent from providers and their insurance

11  companies.

12      107.   Defendants' wrongful actions, inactions, and omissions constituted (and continue

13  to constitute) common law negligence.

14      108.   The damages Plaintiff and the Class have suffered (as alleged above) and will

15  suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

16      109.   In addition to their duties under common law, Defendants had additional duties

17  imposed by statute and regulations, including the duties under the FTC Act. The harms which

18  occurred as a result of Defendants' failure to observe these duties, including the loss of privacy,

19  lost time and expense, and significant risk of identity theft are the types of harm that these

20  statutes and regulations intended to prevent.

21      110.   Defendants violated these statutes when it engaged in the actions and omissions

22  alleged herein, and Plaintiff's and Class members' injuries were a direct and proximate result of

Defendants' violations of these statutes. Plaintiff therefore is entitled to the evidentiary presumptions for negligence *per se*.

111.    Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendants owed a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Personal Information of Plaintiff and the Class.

112.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Personal Information. The FTC publications and orders described above also formed part of the basis of Defendants' duty in this regard.

113.    Defendants gathered and stored the Personal Information of Plaintiff and the Class as part of their business, which affect commerce.

114.    Defendants violated the FTC Act by failing to use reasonable measures to protect the Personal Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

115.    Defendants breached their duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class members' Personal Information, and by failing to provide prompt and specific notice without reasonable delay.

116.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

117.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against.

118.     Defendants breached their duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Personal Information.

119.     Defendants breached their duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

120.     As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

121.     The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendants' negligence.

122.     Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

## COUNT TWO

## BREACH OF IMPLIED CONTRACT

123.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

124.     Plaintiff and Class Members were required to provide Defendants with their Personal Information in order to receive employment opportunities or to purchase gambling products from Defendants or their clients.

125.     When Plaintiff and Class Members provided their Personal Information to Defendants when seeking these services, they entered into implied contracts in which Defendants agreed to comply with their statutory and common law duties to protect their Personal Information and to timely notify them in the event of a Data Breach.

126.    Based on Defendants' representations, legal obligations, and acceptance of Plaintiff's and the Class Members' Personal Information, Defendants had an implied duty to safeguard their Personal Information through the use of reasonable industry standards.

127.    Defendants breached the implied contracts by failing to safeguard Plaintiff's and Class Members' Personal Information, including through industry standard technologies like encryption, and failing to provide them with timely and accurate notice of the Data Breach. Indeed, it took Defendants *almost a year* to warn Plaintiff and Class Member of their imminent risk of identity theft. Defendants also failed to notify Plaintiff and the Class Members whether or not their driver's license numbers were compromised, leaving Plaintiff and Class Members unsure as to the extent of the information that was compromised.

128.    As a direct and proximate result of Defendants' breach of implied contract, Plaintiff and the Class Members have suffered damages, including foreseeable consequential damages that Defendants knew about when it requested Plaintiff's and the Class Members' Personal Information.

**COUNT THREE**
**UNJUST ENRICHMENT**

129.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

130.    Plaintiff and the Class bring this claim in the alternative to all other claims and remedies at law.

131.    Defendants collected, maintained, and stored the Personal Information of Plaintiff and Class members as part their business operations and to gain profits. As such, Defendants had direct knowledge of the monetary benefits conferred upon it.

132.     Defendant, by way of their affirmative actions and omissions, including their knowing violations of their express or implied contracts with the entities that collected Plaintiff's and the Class members' Personal Information, knowingly and deliberately enriched theirelf by saving the costs it reasonably and contractually should have expended on reasonable data privacy and security measures to secure Plaintiff's and Class members' Personal Information.

133.     Instead of providing a reasonable level of security, training, and protocols that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Personal Information, Defendant, upon information and belief, instead consciously and opportunistically calculated to increase their own profits at the expense of Plaintiff and Class members.

134.     Defendants failed to implement—or adequately implement—data security practices, procedures, and programs to secure sensitive Personal Information, including without limitation those industry standard data security practices, procedures, and programs discussed herein.

135.     As a direct and proximate result of Defendants' decision to profit rather than provide adequate data security, Plaintiff and Class members suffered and continue to suffer actual damages, including (i) the amount of the savings and costs Defendants reasonably and contractually should have expended on data security measures to secure Plaintiff's Personal Information, (ii) time and expenses mitigating harms, (iii) diminished value of Personal Information, (iv) loss of privacy, (v) harms as a result of identity theft; and (vi) an increased risk of future identity theft.

136.     Defendant, upon information and belief, has therefore engaged in opportunistic and unethical conduct by profiting from conduct that it knew would create a significant and

highly likely risk of substantial and certainly impending harm to Plaintiff and the Class in direct

violation of Plaintiff's and Class members' interests. As such, it would be inequitable,

unconscionable, and unlawful to permit Defendants to retain the benefits it derived as a

consequence of their wrongful conduct.

137.    Accordingly, Plaintiff and the Class are entitled to relief in the form of restitution

and disgorgement of all ill-gotten gains, which should be put into a common fund to be

distributed to Plaintiff and the Class.

### COUNT FOUR
### VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT
### Cal. Civ. Code §§ 1798.100, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

138.    Plaintiff and the California Subclass repeats, realleges, and incorporates the

foregoing paragraphs as if fully set forth herein.

139.    The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a),

creates a private cause of action for violations of the CCPA.

140.    Defendants are "business[es]" under § 1798.140(d) in that they are organized for

profit or financial benefit of their shareholders or other owners, with gross revenues in excess of

$25 million.

141.    Plaintiff and California Subclass Members are covered "consumers" under §

1798.140(i) in that they are natural persons who are California residents.

142.    The personal information of Plaintiff and the California Subclass Members at

issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in

that the personal information Defendants collects and which was impacted by the cybersecurity

attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social Security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

143.     Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard the California Subclass Members' personal information and that the risk of a data breach or theft was highly likely. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the California Subclass Members. Specifically, Defendants subjected Plaintiff's and the California Subclass Members' nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the Defendants' violations of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

144.     As a direct and proximate result of Defendants' violation of their duties, the unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and California Subclass

Members' personal information included exfiltration, theft, or disclosure through Defendants' servers, systems, and website, and/or the dark web, where hackers further disclosed the personal identifying information alleged herein.

145.    As a direct and proximate result of Defendants' acts, Plaintiff and the California Subclass Members were injured and lost money or property, including but not limited to the loss of Plaintiff and California Subclass Members' legally protected interest in the confidentiality and privacy of their personal information, stress, fear, and anxiety, nominal damages, and additional losses described above.

146.    Section 1798.150(b) specifically provides that "[n]o [prefiling] notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages."

147.    At this time, Plaintiff and California Subclass Members seek only actual pecuniary damages suffered as a result of Defendants' violations of the CCPA, injunctive and declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and any other relief the court deems proper.

148.    Concurrently with the filing of this Complaint, Plaintiff is providing written notice to Defendants identifying the specific provisions of this title he alleges it has violated. If within 30 days of Plaintiff's written notice to Defendants it fails to "actually cure" their violations of Cal. Civ. Code § 1798.150(a) and provide "an express written statement that the violations have been cured and that no further violations shall occur," Plaintiff will amend this complaint to also seek the greater of statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident, or actual damages, whichever is greater. *See* Cal. Civ. Code § 1798.150(b).

**COUNT FIVE**

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,**

**Cal. Bus. & Prof. Code §17200** *et seq.*

**(On Behalf of Plaintiff and the California Subclass)**

149.    Plaintiff repeats, realleges, and incorporates the foregoing paragraphs as if fully set forth herein.

150.    Defendants are "person[s]" as defined by Cal. Bus. & Prof. Code § 17201.

151.    Defendants violated Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

152.    Defendants' "unfair" acts and practices include:

a.    failing to implement and maintain reasonable security measures to protect Plaintiff and California Subclass Members' personal information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Defendants Data Breach. Defendants failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents and known coding vulnerabilities in the industry;

b.    Defendants' failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act (15 U.S.C. § 45), California's Customer Records Act (Cal. Civ. Code § 1798.80 *et seq.*), and California's Consumer Privacy Act (Cal. Civ. Code § 1798.150);

c.  Defendants' failure to implement and maintain reasonable security measures also led to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of Defendants' inadequate security, consumers could not have reasonably avoided the harms that Defendants caused; and

d.  Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

153.    Defendants have engaged in "unlawful" business practices by violating multiple laws, including the FTC Act, 15 U.S.C. § 45, and California common law.

1.    Defendants' unlawful, unfair, and deceptive acts and practices include:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and California Subclass Members' personal information, which was a direct and proximate cause of the Defendants Data Breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, which was a direct and proximate cause of the Defendants Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Defendants' Data Breach;

d.  Misrepresenting that they would protect the privacy and confidentiality of Plaintiff and California Subclass Members' personal information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f.  Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiff and California Subclass Members' personal information; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

154.    Defendants' representations and omissions were material because they were likely to deceive reasonable individuals about the adequacy of Defendants' data security and ability to protect the confidentiality of their personal information.

155.    As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent acts and practices, Plaintiff and California Subclass Members were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

156.    Defendants' violations were, and are, willful, deceptive, unfair, and unconscionable.

157.    Plaintiff and California Subclass Members have lost money and property as a result of Defendants' conduct in violation of the UCL, as stated herein and above. Plaintiff and California Subclass Members paid more than they would have based upon the belief that Defendants would implement reasonable data security practices and suffered from the lost benefit of their bargain with Defendants.

158.    By deceptively storing, collecting, and disclosing their personal information, Defendants took money or property from Plaintiff and California Subclass Members.

159.    Defendants acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff and California Subclass Members' rights.

160.    Plaintiff and California Subclass Members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

**COUNT SIX**

**DECLARATORY JUDGMENT/INJUNCTIVE RELIEF**

161.    Plaintiff incorporates by reference all preceding factual allegations as though fully alleged here.

162.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

163.    Defendants owes duties of care to Plaintiff and Class Members that require Defendants to adequately secure their Personal Information.

164.    Defendants still possess Plaintiff's and Class Members' Personal Information.

165.    Defendants do not specify in the notice of Data Breach letters what steps they have taken to prevent a data breach from occurring again.

166.    Plaintiff and Class Members are at risk of harm due to the exposure of their Personal Information and Defendants' failure to address the security failings that lead to such exposure.

167.    Plaintiff, therefore, seeks a declaration that (1) Defendants' existing security measures do not comply with their duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' personal information, and (2) to comply with their duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

a.    Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b.    Engaging third-party security auditors and internal personnel to run automated security monitoring;

c.    Auditing, testing, and training their security personnel regarding any new or modified procedures;

d.    Segmenting their user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

e.    Conducting regular database scanning and security checks;

f.    Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

g.    Purchasing credit monitoring services for Plaintiff and Class Members for a period of ten years; and

h.  Meaningfully educating Plaintiff and Class Members about the threats they face as a result of the loss of their Personal Information to third parties, as well as the steps they must take to protect themselves.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

a.  An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.  A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, restitution, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

   i. Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

   ii.  Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

   iii. Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

iv. Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

v. Ordering that Defendants cease transmitting Personal Information via unencrypted email;

vi. Ordering that Defendants cease storing Personal Information in email accounts;

vii. Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services;

viii. Ordering that Defendants conduct regular database scanning and securing checks;

ix. Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

x. Ordering Defendants to meaningfully educate their current, former, and prospective employees and subcontractors about the threats faced as a result of the loss of financial and personal information to third parties, as well as the steps they must take to protect against such occurrences;

d. An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

1      e. A judgment in favor of Plaintiff and the Class awarding them pre-judgment and

2         post-judgment interest, reasonable attorneys' fees, costs and expenses as

3         allowable by law; and

4      f. An award of such other and further relief as this Court may deem just and proper.

5

6   **VIII. DEMAND FOR JURY TRIAL**

7      Plaintiff demands a trial by jury on all issues so triable.

8

9   DATED: October 22, 2025          */s/ Nathan R. Ring*
                                     Nathan R. Ring
10                                   Nevada State Bar No. 12078
                                     STRANCH, JENNINGS & GARVEY, LLC
11                                   3100 W. Charleston Boulevard, Suite 208
                                     Las Vegas, NV 89102
12

13                                   A. Brooke Murphy (*pro hac vice application
14                                   forthcoming*)
                                     **MURPHY LAW FIRM**
15                                   4116 Will Rogers Pkwy, Suite 700
                                     Oklahoma City, OK 73108
16                                   T: (405) 389-4989
                                     E: abm@murphylegalfirm.com
17

18                                   *Counsel for Plaintiff and the Proposed Class*

19

20

21

22

23

24

25

26

27

28